IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| John K. Massey Jr., ) | C/A No.: 0:14-1876-TLW-SVH |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | REPORT AND RECOMMENDATION |
| ) | |
| J.T. Branham; York County; NE ) | |
| Schifferle; and B. Schettler, ) | |
| ) | |
| Defendants. ) | |
| ) | |

John K. Massey Jr. ("Plaintiff"), proceeding pro se, originally filed this matter in the Court of Common Pleas for York County, South Carolina, [ECF No. 1-1], and it was removed to this court on May 9, 2014. [ECF No. 1]. In his amended complaint, Plaintiff sues J.T. Branham, York County, NE Schifferle, and B. Schettler ("Defendants") for alleged violations of his constitutional rights related to his incarceration at the York County Detention Center ("YCDC").

This matter comes before the court on Defendants' motion for summary judgment. [ECF No. 120]. Pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the court advised Plaintiff of the dismissal procedures and the possible consequences if he failed to respond adequately to Defendants' motion. [ECF No. 122]. This motion having been fully briefed [ECF Nos. 126, 133], it is ripe for disposition.

All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Civ. Rule 73.02(B)(2)(f) (D.S.C.). Because the motion is dispositive, this report and recommendation is entered for review

by the district judge. For the following reasons, the undersigned recommends Defendants' motion for summary judgment be granted.

I.     Factual Background

Plaintiff alleges he was deprived of his civil rights under the Fifth and Fourteenth Amendments to the United States Constitution and asserts claims of "racial profiling, harassment, miscarriage of justice, and dereliction of duty by a commissioned officer." [ECF No. 50-1 at 3; ECF No. 50 at 2]. Plaintiff claims arise from the following arrests:

- <u>December 13, 2009</u>: criminal conspiracy, grand larceny, burglary second degree, possession of burglary tools

- <u>July 27, 2011</u>: burglary second degree, petit larceny

- <u>September 12, 2011</u>: burglary second degree, enhanced third property offense, criminal conspiracy

- <u>July 17, 2013</u>: grand larceny, malicious injury to property

- <u>January 13, 2014</u>: criminal conspiracy, burglary first degree, grand larceny, possession of cocaine

[ECF No. 50 at 4]. As a result of each arrest, Plaintiff was housed as a pretrial detainee at YCDC. He alleges he suffered physical harm during these periods of incarceration and inadequate medical care. Plaintiff seeks monetary damages. *Id.* at 4.

II.    Discussion

   A.     Standard on Summary Judgment

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of

2

demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials;" or "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. Further, while the federal court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, *see, e.g., Cruz v. Beto*, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts that set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact when none exists. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990).

3

B.     Analysis[1]

1.     Statute of Limitations (2009 Arrest)

Defendants argue that any allegations stemming from Plaintiff's 2009 arrest are barred by the statute of limitations. Section 1983 does not contain an express statute of limitations. Therefore, in civil rights cases filed in the District of South Carolina, this court applies South Carolina's general or residual personal injury statute of limitations, which is three years. S.C. Code Ann. § 15-3-530(5); *see Owens v. Okure*, 488 U.S. 235, 249–50 (1989) (holding that "where state law provides multiple statutes of limitations for personal injury actions, courts considering § 1983 claims should borrow the general or residual statute for personal injury actions"); *Hoffman v. Tuten*, 446 F. Supp. 2d 455, 459 (D.S.C. 2006). South Carolina determines accrual of the limitations period based on the date the person knew, or should by the exercise of reasonable diligence know, that he had a claim. S.C. Code Ann. § 15-78-110, § 15-3-535.

In *Wallace v. Kato*, 549 U.S. 384 (2007), the Supreme Court held that "the statute of limitations upon a § 1983 claim seeking damages for a false arrest in violation of the Fourth Amendment, where the arrest is followed by criminal proceedings, begins to run at the time the claimant becomes detained pursuant to legal process." *See also, Dowdle v. Skinner*, 2013 WL 5771201 (D.S.C. 2013) at *3 ("Applying that rule here, the accrual

---

[1] This discussion often contains a combined analysis of Plaintiff's claims of false arrest, false imprisonment, and malicious prosecution for the sake of brevity, as an absence of probable cause is necessary to prove all claims. However, some of the claims may have additional grounds for dismissal. For instance, a false arrest claim is never actionable if Plaintiff is arrested pursuant to a facially-valid warrant. *Porterfield v. Lott*, 156 F.3d 563, 570 (4th Cir. 1998).

4

date is the date that the plaintiff was arrested and jailed."). Here, Plaintiff was arrested on December 13, 2009, but did not file his original state court summons and complaint until March 31, 2014. [ECF No. 1-1]. Therefore, Plaintiff's claims related to his December 13, 2009 arrest are barred because they were not filed within the statute of limitations, except possibly for his malicious prosecution claim.[2]

Even if Plaintiff's malicious prosecution claim is timely, this cause of action fails because Plaintiff must show that there was an unreasonable seizure. *Lambert v. Williams*, 223 F.3d 257, 261–62 (4th Cir. 2000); *see also Huffman v. Sunshine Recycling, LLC*, 790 S.E.2d 401, 410 (S.C. App. 2016), *reh'g denied* (Sept. 15, 2016) (listing lack of probable cause as an element of malicious prosecution). In this case, Plaintiff cannot show an unreasonable seizure, as a state magistrate found that there was probable cause for Plaintiff's December 13, 2009 arrest [ECF No. 126-9 at 14] and a grand jury returned true-billed indictments on the charges [ECF No. 120-3 at 7–14]. *See U.S. v. Soriano-Jarquin*, 492 F.3d 495, 502 (4th Cir. 2007) (noting probable cause may be satisfied by a grand jury indictment). Therefore, the undersigned recommends Defendants be granted summary judgment on all Plaintiff's claims related to his December 13, 2009 arrest.

    2.    Claims barred by *Heck v. Humphrey* (July 27, 2013 Arrest)

Defendants argue that any claims related to Plaintiff's July 27, 2013 arrest are barred by the United States Supreme Court's ruling in *Heck v. Humphrey*, 512 U.S. 477 (1994). *Heck* held that:

---

[2] A malicious prosecution claim does not accrue until the charges are favorably terminated. Neither party has provided evidence showing when the charges related to Plaintiff's 2009 arrest were dismissed or nolle prossed.

5

> [W]hen a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.

512 U.S. at 487. Although the decision in *Heck* concerned a conviction, its rationale has also been applied to civil rights actions in which Plaintiff challenges a search or seizure in connection with a criminal case. *See Ballenger v. Owens*, 352 F.3d 842, 845–47 (4th Cir. 2003); *Singleton v. 10 Unidentified U.S. Marshals*, Civil Action No. 2:11-1811-TLW-JDA, 2011 WL 4970779, *2 n. 4 (D.S.C. Sept. 1, 2011) (collecting cases), adopted, 2011 WL 5005271 (D.S.C. Oct. 19, 2011).

When addressing a damages claim in a § 1983 suit, "the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Heck,* 512 U.S. at 487. Plaintiff was convicted of grand larceny and malicious injury to property on December 2, 2015. [ECF No. 120-8]. Plaintiff has failed to demonstrate that he successfully challenged his conviction. Because success on this claim would question the validity of his conviction, the undersigned recommends Defendants be granted summary judgment on any alleged constitutional violations stemming from his arrest on July 27, 2013. *See Harvey v. Horan*, 278 F.3d 370, 375 (4th Cir. 2002) (applying *Heck* to claims for injunctive relief), *abrogated on other grounds by Skinner v. Switzer*, 131 S.Ct. 1289, 1298–1300 (2011); *Edwards v. Balisok*, 520 U.S. 641,

6

648 (1997) (A "claim for declaratory relief and money damages . . . that necessarily imply the invalidity of the punishment imposed [] is not cognizable under §1983.").

### 3. Grand Jury Indictments (January 13, 2014 Arrest)

Defendants argue Plaintiff's claims related to his January 13, 2014 arrest fail because on March 20, 2014, a York County grand jury returned true-billed indictments on the charges. A grand jury indictment is sufficient evidence of probable cause, which defeats Plaintiffs' constitutional claims related to his arrests. *See Ex parte United States*, 287 U.S. 241, 250, (1932) ("It reasonably cannot be doubted that, in the court to which the indictment is returned, the finding of an indictment, fair upon its face, by a properly constituted grand jury, conclusively determines the existence of probable cause for the purpose of holding the accused to answer."); *U.S. v. Soriano-Jarquin*, 492 F.3d 495, 502 (4th Cir. 2007) (noting probable cause may be satisfied by a grand jury indictment); *White v. Coleman*, 277 F.Supp. 292, 297 (D.S.C. 1967) ("[W]here the grand jury have returned a true bill upon the charge made, such finding amounts to a judicial recognition that probable cause does exist . . . and infers prima facie probable cause for the prosecution." (citation omitted)). Because Plaintiff was indicted by the grand jury for the January 13, 2014 arrest, the undersigned recommends Defendants be granted summary judgment related to such claims.

### 4. Qualified Immunity (July 27, 2011 and September 12, 2011 Arrests)

Defendants argue they are entitled to qualified immunity for Plaintiff's claims. A review of the facts specific to each of the remaining arrests is necessary prior to a qualified immunity analysis.

7

The parties have provided the following facts regarding Plaintiff's arrest on July 27, 2011: After a report of a burglary in process at 3:08 a.m. on July 27, 2011, at a scrap yard, police commenced an investigation. [ECF No. 126-10 at 2]. Near the scene of the crime, police found Dakova Shannon, who was missing a shoe and whose pants were covered in mud. *Id.* at 2–3. Another officer observed Plaintiff walking near the scene of the crime and, upon discovering there was an outstanding warrant for Plaintiff's arrest on a forgery charge, Plaintiff was arrested and taken to the police department. *Id.* at 3.

The police investigation revealed a muddy footprint that matched the tread of Shannon's shoe. *Id.* They also found Shannon's other shoe in the scrap yard. *Id.* After admitting he had initially lied to police, Shannon told police that he had taken Massey to the area. *Id.* According to Shannon, Plaintiff told Shannon he had to pick up something in the woods and disappeared into the scrap yard. *Id.* at 4. Shannon then went into the scrap yard to look for Plaintiff, but at the time that he found Plaintiff, someone else began approaching with a flashlight. *Id.* Shannon then fell when he was running out of the scrap yard and got hurt. *Id.* The police recovered the video of the break in, which the police report indicates shows two people breaking into the building, but Plaintiff argues only shows one suspect. *Id.*; ECF No. 126 at 25. Plaintiff claims that Shannon subsequently informed him that the police suggested Shannon provide a statement implicating Plaintiff in order to secure the warrant; however, Plaintiff has not provided any evidence for such an allegation other than his own hearsay statements.

Based on the evidence and witness statements, Schettler believed he had probable cause. A magistrate agreed, and signed the arrest warrants on July 28, 2011. [ECF No.

120-10 at 2–3]. Probable cause was again found at a preliminary hearing. [ECF No. 120-5 at 2–3].[3]

The parties have provided the following facts regarding Plaintiff's arrest on September 12, 2011: On June 5, 2011, police commenced an investigation into a burglary of 30 cases of domestic beer from a bar. [ECF No. 126-11 at 2]. Video surveillance revealed two black males driving a red Chevrolet S-10 were responsible for the burglary. *Id*. Plaintiff was identified in the video by Vivian McCleod, a relative of Plaintiff's. *Id*.; ECF No. 126 at 24. Branham could then also identify Plaintiff as one of the suspects from his prior investigations involving Plaintiff. [ECF No. 126-11 at 3]. Another witness also told police the video looked like Plaintiff, although she was not 100% sure. *Id*. at 4. Branham believed he had probable cause and prepared an arrest warrant. [ECF No. 120-4 at 2–4]. A magistrate agreed and issued the warrant. *Id*. Probable cause was also found at Plaintiff's preliminary hearing. [ECF No. 120-5].

Under the qualified immunity defense, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity ensures that "[o]fficials are not liable for bad guesses in gray

---

[3] The preliminary hearings for both arrests were held on the same day and the same form was used for both. [ECF No. 120-5 at 2–3]. The charge numbers first listed apply to the September 12, 2011 arrest. However, the charge numbers for the July 27, 2011 arrest are listed where the form states "magistrate finding referencing probable cause." The evidence on page one also matches the facts provided for the July 27, 2011 arrest. The second page shows handwriting stating "Second Case: 3 witnesses Id'd although one not debriefed the Defendant. PC found on 3 charges noted on front of form." *Id*.

9

areas; they are liable for transgressing bright lines." *Maciariello v. Sumner*, 973 F.2d 295, 298 (4th Cir. 1992). To resolve a qualified immunity defense, the court must (1) determine whether the facts alleged, taken in the light most favorable to the plaintiff, show that the defendants' conduct violated a constitutional right, and (2) determine whether the right was clearly established at the time of the alleged misconduct. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)). Courts may address the two prongs of the qualified immunity analysis in whichever order is appropriate in light of the circumstances of the particular case at hand. *Id*.

Therefore, the court will turn to the question of whether those rights were clearly established at the time of the violation. The issue that the court must resolve is whether, at the time the events occurred, the law "gave the officials 'fair warning' that their conduct was unconstitutional." *Ridpath v. Bd. of Governors Marshall Univ*., 447 F.3d 292, 313 (4th Cir. 2006)).

Here, there is no clearly-established law giving Defendants warning that they did not have probable cause under the circumstances of Plaintiff's arrests. The Fourth Circuit has held that "when a police officer acts pursuant to a warrant, he is entitled to qualified immunity if he could have reasonably believed that there was probable cause to support the application." *Porterfield v. Lott*, 156 F.3d 563, 570 (4th Cir. 1998) (citing *Malley v. Briggs*, 475 U.S. 335, 344–45 (1986)). Assuming without deciding that Defendants' conduct violated Plaintiff's constitutional rights, the undersigned finds that Schettler and Branham could have reasonably believed that there was probable cause to support their applications for the respective arrest warrants for Plaintiff. Therefore, the undersigned

recommends the district judge find that Defendants are entitled to qualified immunity on Plaintiff's claims related to the July 27, 2011 and September 12, 2011 arrests.

### 5. Abuse of Process

Under South Carolina law, "[t]he essential elements of abuse of process are: (1) an ulterior purpose; and (2) a willful act in the use of the process not proper in the regular conduct of the proceeding." *Johnson v. Painter*, 307 S.E.2d 860, 860 (S.C. 1983); *see also Hainer v. Am. Med. Int'l, Inc.*, 492 S.E.2d 103, 107 (S.C. 1997) ("There is no liability where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions.") Plaintiff has provided no allegations related to the second element of the cause of action. Therefore, the undersigned recommends Defendants be granted summary judgment on Plaintiff's claims for abuse of process.

### 6. Racial-Profiling Claims

Plaintiff's claims of racial profiling or race discrimination are insufficient to state a constitutional claim. Plaintiff claims that in 2009, Branham tried to shake his hand in the sally port of the YCDC in front of other inmates and detention staff, which Plaintiff claims would have subjected him to being labeled a jail house informant. [ECF No. 50 at 3]. Plaintiff also claims that when Branham and Schettler suggested Plaintiff sign a statement incriminating himself, he "told both detectives to go have 'sex' with themselves." *Id*. After a "heated verbal confrontation," Plaintiff alleges that Branham told him, "your black ass is going to stay in jail for that remark." *Id*. Plaintiff provides no other evidence that Defendants had any discriminatory intent related to any of his

11

interactions. Therefore, the undersigned recommends Defendants be granted summary judgment on Plaintiff's claims of race discrimination.

7.     Conditions-of-Confinement Claims

Plaintiff has failed to state viable claims against Defendants based on alleged poor conditions-of-confinement or inadequate medical care while at YCDC because he has not shown how Defendants were responsible for such conditions. Plaintiff appears to argue that Defendants are responsible because they arrested him on the charges on which he was being detained. Such an argument is insufficient to establish personal liability. In a § 1983 action, "liability is personal, based upon each defendant's own constitutional violations." *Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001). Because Plaintiff has not shown Defendants were personally involved, the undersigned recommends the district judge grant Defendants summary judgment on Plaintiff's claims regarding treatment by detention staff during his incarceration.

8.     Remaining Causes of Action

In his response to summary judgment, Plaintiff lists 32 causes of action, many of which are not mentioned in his amended complaint, are redundant, or are not recognized causes of action. [ECF No. 126 at 1–3].[4] Additionally, Plaintiff does not specifically support each of these allegations with evidence from the record within his 70-page brief

---

[4] For example, Plaintiff lists separate causes of action for false arrest, intentional bad faith arrests, intentional illegal arrests, and intentional police misconduct in addition to his multiple claims of malicious prosecution and abuse of process. He also lists the following as causes of action: "loss" pursuant to the South Carolina Tort Claims Act; disfigurement of personal body parts from serious injury; prescribing improper medications for severe pain; and verbal assault.

or accompanying exhibits. The mandated liberal construction afforded to pro se pleadings means that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so; however, a district court may not rewrite a complaint to include claims that were never presented, *Barnett v. Hargett*, 174 F.3d 1128 (10th Cir. 1999), or construct the plaintiff's legal arguments for him, *Small v. Endicott*, 998 F.2d 411 (7th Cir. 1993).[5] Therefore, the undersigned recommends Defendants be granted summary judgment on Plaintiff's remaining claims.

III.    Conclusion and Recommendation

For the foregoing reasons, the undersigned recommends that the district judge grant Defendants' motion for summary judgment [ECF No. 120].

IT IS SO RECOMMENDED.

January 11, 2017                              Shiva V. Hodges
Columbia, South Carolina                      United States Magistrate Judge

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**

---

[5] As a practical matter, if the district judge accepts the recommendations herein, many of the causes of action will be foreclosed by the court's ruling. For instance, if Plaintiff is unable to show constitutional violations by Defendants, he has no basis for asserting the York County Sheriff's Department has a unconstitutional policies and practice.

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Robin L. Blume, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).